FILED & ENTERED

NOV 04 2013

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY penning DEPUTY CLERK

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In re: | CHAPTER 7 |
| Justin Thomas Chlarson, | Case No.: 2:12-bk-36407-TD<br>Adv. No.: 2:12-ap-02406-TD |
| Debtor. | **MEMORANDUM DECISION** |
| Kendra Vorhies Flores, | Date: October 17, 2013<br>Time: 11:00 a.m.<br>Courtroom: 1345 |
| Plaintiff,<br>v. | |
| Justin Thomas Chlarson, | |
| Defendant. | |

This memorandum addresses Plaintiff's Motion for Summary Judgment (sometimes, Motion) brought in the above-captioned adversary proceeding pursuant to Federal Rule of Civil Procedure 56 as made applicable by Federal Rule of Bankruptcy Procedure 7056. The Motion is based on a judgment awarded to Plaintiff by the

-1-

Superior Court of the State of Washington. The superior court judgment was based on an arbitrator's detailed findings and conclusions. The relevant history leading up to the superior court judgment is set forth below.

Plaintiff Kendra Vorhies Flores (Flores) sued Defendant Justin Thomas Chlarson (Chlarson) in the superior court in August 2011. Flores' complaint alleged, among other things, conversion, outrage, and malicious injury to an animal based on allegations of Chlarson's involvement in the death of Flores's cat. Chlarson filed an answer to the superior court complaint. The matter was sent to arbitration, both parties participated and testified, and on April 19, 2012, the arbitrator rendered written findings and conclusions. On April 20, 2012, the superior court entered judgment in Flores' favor based on the arbitrator's findings and conclusions and awarded Flores $25,460.00.[1]

On August 1, 2012, Chlarson filed a voluntary chapter 7 petition in this court. Flores timely filed this adversary proceeding on September 26, 2012, seeking nondischargeability of her $26,460 superior court judgment pursuant to 11 U.S.C. 523(a)(6).[2] Flores' adversary complaint asserted that there was no appeal from the superior court judgment and that Chlarson's right to appeal expired on May 20, 2012. Thus, it appears that the April 20, 2012, superior court judgment is final.

Chlarson did not file an answer or motion in response to Flores' adversary complaint. Attorney Thomas Allison, Chlarson's bankruptcy attorney, entered an appearance for Chlarson in connection with the first adversary status conference hearing on January 3, 2013, by signing a joint Status Conference Report on Chlarson's

---

[1] The complete arbitrator's decision is attached as Appendix A. The Judgment Summary and Order Granting Judgment on Award is attached as Appendix B.
[2] All such references are to Title 11 of the United States Code unless otherwise indicated.

behalf and appearing for Chlarson at a status conference hearing on January 3, 2013. Chlarson's attorney later signed a Pretrial Stipulation filed on July 18, 2013, in the adversary. The parties' Pretrial Stipulation acknowledged that no issues of fact remained to be litigated. On September 4, 2013, Flores filed her Motion for Summary Judgment. Chlarson and his attorney were both properly served with Flores' Motion for Summary Judgment. Chlarson did not oppose Flores' Motion.[3] Chlarson's attorney did not appear at the October 17, 2013 hearing on the motion. Based on the record and evidence before the court,[4] the court grants the Motion and renders this court's findings of fact and conclusions of law, as follows:

Summary judgment is appropriate here because "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The arbitrator's findings and conclusions are entitled to preclusive effect in this adversary;[5] they establish the elements necessary to support a judgment pursuant to § 523(a)(6) and no issues of material fact remain to be litigated. *Grogan v. Garner*, 498 U.S. 279, 284, 111 S. Ct. 654, 661, 112 L. Ed. 2d 755 (1991) (finding that collateral estoppel principles apply in exception to discharge proceedings). Section 523(a)(6) states in relevant part, "(a) A discharge under section 727. . . of this title does not discharge an individual debtor from any debt . . . (6) for willful and malicious injury by the debtor to another entity or to the property of another entity."

---

[3] Under the court's local rule 9013-1(h) Chlarson's failure to oppose the Motion is deemed to be his consent to the court granting the relief requested therein.

[4] The court takes judicial notice of the arbitrator's written decision and the judgment from the superior court. Judicial notice is appropriate for records and "reports of administrative bodies." *See United States ex rel. Robinson v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992).

[5] Pursuant to 28 U.S.C. § 1738, as a matter of full faith and credit, federal courts are required to apply the pertinent state's collateral estoppel principles. *Gayden v. Nourbakhsh (In re Nourbakhsh)*, 67 F.3d 798, 800 (9th Cir. 1995).

The uncontroverted and undisputed facts[6] of the arbitration decision establish both a willful and malicious injury. The arbitrator's detailed findings of fact were meticulous. Testimony was provided by Dr. Trish Roisum, DVM, which established blunt force trauma as the cat's cause of death resulting from broken ribs and severe injury to the diaphragm and thoracic wall. Dr. Roisum opined that the cause of these injuries was likely a kick; the injuries were consistent with a fast firm object that came into contact with the cat's lateral chest causing the ribs to fracture in two places and the diaphragm to tear. Dr. Roisum did not believe the injuries were caused by the cat falling off a bed or from a dog attack. In fact, Dr. Roisum's testimony refuted Chlarson's testimony that the latter two scenarios, or others asserted by Chlarson, could have been the cause of the cat's injuries.

The arbitrator also noted that Chlarson was the only individual alone with the cat during the time the cat suffered its fatal injuries, the cat was an indoor cat, and the injuries occurred while the cat was inside the house with Chlarson. The arbitrator rejected Chlarson's argument that Flores may have caused the cat's injuries because Chlarson was the only person present with the cat when its injuries occurred.

Chlarson also admitted to sending Flores a text message threatening injury to the cat just before the cat was fatally injured. The arbitrator noted that the timing of Chlarson's message, Chlarson's admission that he shooed the cat off the bed and couch, and the testimony of the parties' marital difficulties, provided the requisite motive and explanation as to why it was more probable than not that Chlarson caused the cat's injuries.

---

[6] Chlarson pled guilty to misdemeanor charges against him based on his involvement with the death of Flores's cat, but the arbitrator gave only minimal weight to this fact based on his assessment of the mitigating effects of a plea agreement entered into by Chlarson.

Animal control officers Quinn and Berg provided testimony about their investigation into the cat's death. The arbitrator carefully analyzed their reports with respect to what occurred with the cat. Chlarson admitted to the officers that he was very angry with the cat and had shooed the cat off the bed. Chlarson admitted that he and Flores were the only individuals present at any time with the cat. The investigating officers rejected Chlarson's explanations of what could have caused the cat's injuries because those explanations were not consistent with the injuries the cat sustained.

The arbitrator rejected Chlarson's testimony that he merely shooed the cat off the bed. Weighing the evidence presented, the arbitrator determined that Chlarson likely scooped the cat off the bed with such strength and velocity that the cat struck a hard-edged object that caused the fatal injury. The arbitrator concluded that "based upon all the admissible evidence as a whole, there is a finding that the injury and death of the cat was directly due to an act by the defendant, Mr. Chlarson."

After considering the possible inferences from the evidence before him, the arbitrator added:

> . . . The amount of force applied to generate this severe injury to the cat and the volitional nature of the act itself of scooping or tossing the cat leads to the conclusion that such was a[n] intentional act by defendant as defined in legal terms. I conclude that such an act by defendant was intentional as opposed to pure negligence.
>
> Based upon the preponderance of the evidence, I find for the plaintiff with regard to the causes of action for conversion, for outrage, and for malicious injury to an animal. Conversion was due to the willful deprivation of the chattel by the act of defendant. Outrage [was] due to the intentional and reckless act of the defendant. I also find that plaintiff has met her burden to show that such intentional

> act amounted to malicious injury to an animal due to the legally intentional act and evidence that the defendant was aware of plaintiff's long standing ownership and relationship to the cat, his threat in the text message, and his frustration with regard to plaintiff's reluctance to end [their] marriage [to each other].

The arbitrator carefully explained and then awarded damages for the intrinsic value of the cat in the amount of $15,000 and $10,000 for emotional damages. Attorney's fees and statutory costs also were awarded. The judgment includes accruing interest.

The arbitrator's recitation of the evidence, the legal issues and his award are thorough, clear, logical and appear to bring the superior court judgment within the requirements for nondischargeability in bankruptcy pursuant to § 523(a)(6). These findings of fact and conclusions of law are sufficient under the Ninth Circuit standards for nondischargeability pursuant to § 523(a)(6). Under § 523(a)(6), this means that for nondischargeability debtor's actions equated with "willful and malicious" injury.

The first question under § 523(a)(6) is whether there is "willful" injury, which must entail a deliberate or intentional injury. *Kawaauhau v. Geiger*, 523 U.S. 57, 61–62 (1998). In the Ninth Circuit, the intent required to be considered "willful" is either the subjective intent of the actor to cause harm or the subjective knowledge of the actor that harm is substantially certain to occur. *Carrillo v. Su (In re Su)*, 290 F.3d 1140, 1144-45 (9th Cir. 2002).

Chlarson's intentional and deliberate act as established in the arbitration decision was an intentional act as defined by *Geiger* and *Su*. The decision concluded that Chlarson did not engage in a negligent act. Rather, the arbitrator concluded, "The

amount of force applied to generate this severe injury to the cat and the volitional nature of the act itself of scooping or tossing the cat leads to the conclusion that such was an intentional act . . . ." This constitutes a willful injury as defined by § 523(a)(6); it is fair to infer from the arbitrator's decision that Chlarson had the subjective intent to cause harm to the cat and Flores and/or the subjective knowledge that harm was substantially certain to occur based on his intentional actions in shooing or tossing the cat with a significant amount of force.

The second step in the 523(a)(6) inquiry is whether Debtor's conduct was "malicious." The relevant test for finding "malicious" conduct is whether the evidence establishes: "(1) a wrongful act; (2) done intentionally; (3) which necessarily causes injury; and (4) is done without just cause and excuse." *Jett v. Sicroff (In re Sicroff)*, 401 F.3d 1101, 1106 (9th Cir. 2005). The Supreme Court has stated that when a wrongful act is voluntarily committed, with knowledge that the act is wrongful and will necessarily cause injury, it constitutes a willful and malicious injury within the meaning of § 523(a)(6). *See Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1208 (9th Cir. 2001).

The elements for malicious injury under § 523(a)(6) also were established in the arbitration decision. The evidence persuaded the arbitrator that Chlarson committed wrongful acts of conversion, outrage and malicious injury to an animal. In committing these wrongful acts, the arbitrator found that Chlarson committed "intentional act[s]," which "amounted to malicious injury" to the cat. The arbitrator's decision supports a conclusion here that this malicious injury was done without justification or excuse. The arbitrator rejected Chlarson's exculpatory testimony with respect to his actions. The arbitrator's decision also carefully establishes the maliciousness of the injuries and

damages suffered by Flores. Thus, the Ninth Circuit standards for a malicious injury are satisfied.

Based on the foregoing analysis, this court concludes that summary judgment is warranted because the arbitration decision, as confirmed in the superior court judgment, obviates the need for any further litigation of the matter. As discussed, (1) the issues of willful and malicious injury in this adversary proceeding are identical to those litigated in the superior court, (2) they were actually litigated and necessarily decided there, (3) the parties are the same, and (4) the superior court judgment is final.[7] Moreover, giving preclusive effect to the superior court judgment is fair and furthers the public policies underlying the doctrine, including judicial economy and conservation of the court's time and resources.

Chlarson's debt is nondischargeable pursuant to § 523(a)(6).

IT IS SO ORDERED.

Date: November 4, 2013

Thomas B. Donovan
United States Bankruptcy Judge

---

[7] Under Washington law, for collateral estoppel to apply, the party seeking application of the doctrine must establish that (1) the issue decided in the earlier proceeding was identical to the issue presented in the later proceeding, (2) the earlier proceeding ended in a judgment on the merits, (3) the party against whom collateral estoppel is asserted was a party to, or in privity with a party to, the earlier proceeding, and (4) application of collateral estoppel does not work an injustice on the party against whom it is applied. *Christensen v. Grant Cnty. Hosp. Dist. No. 1*, 152 Wash. 2d 299, 307 (2004)

-8-

**APPENDIX A**

[ ] EXPEDITE
[x] No hearing set
[ ] Hearing is set

### IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
### IN AND FOR THE COUNTY OF THURSTON

| | |
|---|---|
| KENDRA VORHIES, | Case No.: 11-2-01832-3 |
| Plaintiff, | ARBITRATOR'S FINDINGS AND CONCLUSIONS |
| vs. | |
| JUSTIN T. CHLARSON; | |
| Defendant. | |

On Feb. 29, 2012, Arbitrator Harold Carr heard the arbitration of the above matter. On Mar. 19, 2012, he prepared an award to plaintiff in the sum of $25,000 plus statutory costs and attorney's fees against Defendant Justin Chlarson. Attached is a true copy of his findings and conclusions.

Dated this Apr. 19, 2012.

ANIMAL LAW OFFICES

_____
Shawn T. Newman for Adam P. Karp, WSBA #28622
Attorney for Plaintiff

**ARBITRATOR'S FINDINGS AND CONCLUSIONS - 1**

ANIMAL LAW OFFICES OF
ADAM P. KARP, ESQ.
114 W. Magnolia St., Ste. 425 • Bellingham, WA 98225
(360) 738-7273 • Facsimile: (360) 392-3936
adam@animal-lawyer.com

Case 2:12-ap-02406-TD    Doc 1    Filed 10/26/12    Entered 10/26/12 12:25:09    Desc
Main Document    Page 14 of 19

# Law Offices of
# Harold D. Carr, P.S.
### Attorneys at Law
*A Professional Service Corporation*

Karen M. Kay
Matthew Van Gieson
Elizabeth A. Abbott
Andrew B. Williams
Michael W. Montgomery

Barbara Eyles • Heather Fiskness • Kristin Gorum
Charmin Holbrook • Trisha Lininger • Ruth Miller • Julie Manson
Renee Kitka • Gina Snow • Leatha Emerson • Leslie Lueck
Martin Barnett • Shirley McKay • Tonya Page • Alicia Mendoza
Rosie Delgadillo • Constance Stevenson • Jennifer Schoonover • Josie Madrid
Stacy Rex • Jessica Beazley • Cheryl Prihar • Diane Winters

---

**Thurston County**
4535 Lacey Blvd SE, Lacey, WA 98503
Ph: 360-455-0030  Fax: 360-455-0031

www.haroldcarrattorney.com
Tax I.D. # 91-1508016

**Pierce County**
10136 Bridgeport Way SW, Lakewood, WA 98499
Ph: 253-365-6565  Fax: 253-365-6350

---

Arbitration Decision   March 16, 2012

Re: Vorhies vs Chlarson   Thurston Case No 11-2-01832-3

I apologize for taking the entire 14 days to render my opinion. I took additional time to mull over the evidence presented and to consider all legal arguments carefully.

The burden of proof in a civil matter is preponderance of the evidence. Essentially this requires proving a matter by greater than fifty percent (50%) probability, which is defined as more likely than not likely. This is plaintiff's burden and if met, defendant is required to present sufficient evidence to controvert plaintiff's evidence.

After careful consideration, I find for the Plaintiff.

Most arbitration opinions are bare and the arbitrator simply writes an award amount without any explanation. I find that this case warrants a written analysis so that the parties can understand how the decision was made.

My decision was based upon the evidence presented as a whole. However, I will discuss factors that I found relevant.

**Fact Issues**

1) The guilty plea

I gave some weight to this, however, I understand that there are some instances where an innocent individual may choose to plead guilty to a misdemeanor in order to avoid the possibility of a felony conviction that might carry more severe consequences or perhaps end defendant's military career. I certainly did not find this dispositive.

2) Declaration of Dr. Trish Roisum, DVM

The veterinarian made it clear with a high level of confidence beyond reasonable medical certainty that the injury to the cat was caused by blunt trauma force. The doctor describes the injuries as broken ribs and severe injury to the diaphragm and thoracic wall. She gives her opinion that this is consistent with a fast firm object that came into contact with the cat's lateral

chest causing the ribs to fracture in two places and the diaphragm to tear. The doctor states that this could be caused by a kick. Dr. Roisum states that these injuries were not a result of a fall off the bed or a bite from a French bulldog. She gives her opinion that the injuries were due to an attack.

Neither the defendant's testimony that the cat might have been injured by a fall off the bed or by rough playing with their French bulldog, nor his statements to the Animal Control Officers that the cat "could have tried to squeeze through too small of a space or something", or that "some animals are born like that" are sufficient to controvert this evidence.

3) Defendant and Plaintiff were the only individuals with care and control of the cat

It is undisputed that the cat was an indoor cat and therefore the injuries must have occurred in the home. Mr. Chlarson was the only person present and alone with the cat during the most probable timeframe that the cat suffered the injuries. Ms. Vorhies was present with Mr. Chlarson later in the day on Friday when the symptoms of the cat's distress were first noticed. I do not accept a res ipsa loquitur legal argument with regard to this evidence. However, this evidence does isolate the causes of injuries to the cat to an event during that timeframe and in the home occupied by only the Defendant and the Plaintiff. Mr. Chlarson's mention that one explanation is that Ms. Vorhies might have caused the injury is not persuasive in light of the other evidence presented as analyzed below.

4) Defendant's text message

The text message and the contents therein was presented by way of testimony of the plaintiff and plaintiff's mother. Mr. Chlarson admitted both the fact that he sent the text message and the content of the message. I found that the contents of the text message, "If your f***ing cat gets on my bed again, I swear . . ." shows an unusual degree of anger and threat directed towards the cat and to Ms. Vorhies. The timing of the message by Defendant's own admission occurred just a few seconds after he admits shooing the cat off the bed. There was testimony by Mr. Chlarson that he previously shooed the cat off the bed 15-20 times before and 10 times off the couch. The difference in this instance is the threat and anger in the text message that occurred just subsequent to this event. This coupled with evidence with regard to the marriage difficulties provides both motive and explanation as to why this injury to the cat occurred on a more probable that not basis due to plaintiff's actions. I found this fact important as to whether the injury to the cat was a legally intentional act or legally negligent act. How this evidence applies to the arbitration award and to legal arguments regarding the cause of action is addressed below.

5) Report and declaration of Animal Control Officers Quinn and Berg

I gave weight to the interview of Mr. Chlarson by the investigating officer with regard to defendant's statements to the officers and the discrepancies therein. I gave weight to the observations of Mr. Chlarson's demeanor by both officers during his interview and no consideration to their conclusion that they felt he was not telling the truth. With regard to his statements to the officers, Mr. Chlarson admits that it was on Friday that Ms. Vorhies told him that she noticed something wrong with the cat. Both plaintiff and defendant were at home at that time. Therefore the injury to the cat occurred on Friday. He admitted to being angry at the cat in the past for throwing up and him stepping in it. Mr. Chlarson admitted to the Animal Control Officer that he told Mr. Vorhies that "at first the puppy hurt the cat" and stated that he did not state that he "tossed the cat off the bed", but that he said he "shooed the cat off the bed". Mr. Chlarson admitted that only the two of them were present at any time with the cat. He gave several other possible explanations regarding the cat's injuries which were insufficient to explain the injuries to the cat and which are controverted by Dr. Roisum's opinion. I could not consider statements made by the other witnesses interviewed by the Animal Control Officer, as those statements were not presented in person or by declaration with the exception of Ms. Georgia Vorhies, mother of Plaintiff. Most of that information was redundant and it is admitted by both parties that there was a great deal of stress in the household due to Mr. Chlarson wanting to separate from Ms. Vorhies; his wishes to obtain a divorce; and his frustration due to Ms. Vorhie's reluctance to leave the marriage and the residence. I understand that this evidence was presented by Plaintiff in order to demonstrate a motive for the alleged act directed towards the cat in a moment of anger.

6) Defendant's testimony that he shooed the cat off the bed and that his statement that he did not kick the cat.

Dr. Roisum opines that the injuries to the cat could have been inflicted by a kick. She describes the injury happening when a fast, firm object came into contact with the cat's lateral chest causing the ribs to fracture and the diaphragm to tear. She goes on to make it clear that such injuries do not occur by falling or by accidental household activity or by a small French bulldog. As stated earlier, this defeats Mr. Chlarson's other explanations. Mr. Chlarson states that he did not kick the cat. This may be true, but from consideration of all of the evidence, this statement seems to be a technical truth, but not the whole truth. Assuming that Mr. Chlarson did not kick the cat with his foot, he does admit to shooing the cat off the bed and admits to sending the angry text message immediately following.

The defendant's allegation that he simply "shooed the cat off the bed" is not consistent with the preponderance of the evidence. There is much more evidence presented than just "her word versus his word" as to what occurred.

Based upon all the evidence the most likely explanation is that Defendant, in anger and frustration scooped the cat off the bed with such strength and velocity that he tossed the cat and that the cat struck a hard-edged object, most likely furniture such as the edge of a dresser or chest of drawers causing the injury. Mr. Chlarson may not have meant to have the cat strike the furniture or meant to cause such severe injuries to the cat. The other most likely explanation based upon the preponderance of the evidence points to a direct attack upon the cat by Defendant.

Either way, based upon all the admissible evidence as a whole, there is a finding that the injury and death of the cat was directly due to an act by the defendant, Mr. Chlarson.

Legal Analysis

There are some scenarios in which it could have been concluded that the cat could have been injured due to defendant's negligence. However, the facts as presented above do not support this conclusion. The amount of force applied to generate this severe injury to the cat and the volitional nature of the act itself of scooping or tossing the cat leads to the conclusion that such was a intentional act by defendant as defined in legal terms.
I conclude that such act by defendant was intentional as opposed to pure negligence.

Based upon the preponderance of the evidence, I find for the plaintiff with regard to the causes of action for conversion, for outrage, and for malicious injury to an animal. Conversion was due to the willful deprivation of the chattel by the act of defendant. Outrage due to the intentional and reckless act of the defendant. I also find that plaintiff has met her burden to show that such intentional act amounted to malicious injury to an animal due to the legally intentional act and evidence that the defendant was aware of plaintiff's long standing ownership and relationship to the cat, his threat in the text message, and his frustration with regard to plaintiff's reluctance to end the marriage. I find that the damages under any of the theories of recovery are as follows:

**Damages**

Intrinsic Value of cat

With regard to the intrinsic value of the cat, I award $15,000. I am persuaded that the intrinsic value is not market value as there is none. I reject that I am limited to the market value based upon the costs of $64.00 for adopting another cat. The value should be the intrinsic value to the owner. I want to make it clear that no amount of this award is punitive in nature. Nor is any of the value based upon "unusual sentimental value". While juries may make this error, be assured that this arbitrator did not. I am aware that

to an animal owner, such amount may seem very small but the law does not allow for "mawkishly emotional evaluation" with regard to measuring damages. To an individual who is not the owner, the value may seem high. If an animal were newly acquired, while the owner might be "attached" to the cat, the intrinsic value would be low in such case. If an animal were in the last stages of life, the owner might again be highly bonded to such animal, but such intrinsic value might be lower than during the point of ownership when the animal has been owned for a considerable time with considerable time left for ownership based upon the animal's life expectancy. The evidence shows that Plaintiff owned the cat for ten years and that there was no indication that the cat was ill or that there was a shortened life expectancy limiting the value of this animal. Additional evidence considered was the willingness of the Plaintiff to incur high medical expenses for the surgery and seeking medical care in an attempt to save the life of the cat.

Emotional damages of Plaintiff

With regard to emotional damages, I award $10,000. I have separated out the issue with regard to the value of the cat to the owner and assessed damages based upon the emotional distress to the plaintiff related only to the injuries and resultant death of the cat. Part of the emotional damages is based upon the initial emotional damage caused by witnessing the injuries and resultant suffering of the animal. A portion of the damages is assessed for the grief associated with the death of the cat. A portion of the damages is assessed for the continued emotional distress experienced by the plaintiff, not allowing the plaintiff to consider another companion cat. A portion of the damages is assessed for plaintiff's emotional feelings of guilt for not protecting the cat from the injury by staying in the marriage.

Loss of Use

I do not award any loss of use based upon a daily value of the loss of the cat to the owner as requested by the Plaintiff. I am not persuaded that I can determine fairly a daily loss of use, as I do not find that such animal has a replacement value during the interim that I can separate out from the value assessed in the intrinsic value. Since the replacement value of the animal is not easily ascertained, it would be difficult for the defendant to have paid that value in order to stop the assessment of a daily loss of use of such animal. Although that difficulty alone would not normally prohibit a loss of use claim, I find that awarding a daily loss value in this particular case would trivialize the value of this animal to the owner. More simply put, such loss of use value has been considered to be a portion of the intrinsic value as I have assessed a total value of the cat based upon consideration of both past, present and future value to the owner.

Total award is $25,000.00. I award statutory costs and attorney's fees to the Plaintiff as the prevailing party.

Dated this 16th day of March, 2012

*[signature]*

Harold D. Carr
Arbitrator

**APPENDIX B**

FILED
SUPERIOR COURT
THURSTON COUNTY, WA

2012 APR 20  AM 11: 25

BETTY J. GOULD, CLERK

[ ] EXPEDITE
[ ] No hearing set
[x] Hearing is set
Date: Fri., Apr. 20, 2012
Time: 9:00 a.m.
Judge/Calendar: McPhee/Civil

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF THURSTON

KENDRA VORHIES,

    Plaintiff,

vs.

JUSTIN T. CHLARSON;

    Defendant.

Case No.: 11-2-01832-3

JUDGMENT SUMMARY AND ORDER
GRANTING JUDGMENT ON AWARD

*Clerk's Action Required*

## JUDGMENT SUMMARY

**Judgment Creditor:** Kendra Vorhies

**Judgment Creditor's Attorney:** Adam P. Karp, Shawn Newman

**Judgment Debtor:** Justin T. Chlarson

**Principal:** $25,000

**Interest:** $0.00 but accruing

**Costs:** $230 filing fee, $30 transcript fee, $200 attorney's fee

**Total Judgment: $25,460**

This judgment shall bear interest at **5.25 percent**,[1] as provided by RCW 4.56.110.

---

[1] Bank prime loan rate on 4/2/12 as reported by Federal Reserve is 3.25%. www.federalreserve.gov/releases/h15/current.

JUDGMENT/ORDER ON AWARD - 1

ANIMAL LAW OFFICES OF
ADAM P. KARP, ESQ.
114 W. Magnolia St., Ste. 425 • Bellingham, WA 98225
(360) 738-7273 • Facsimile: (360) 392-3936
adam@animal-lawyer.com

12-9-00461-0

## ORDER

On Feb. 29, 2012, Arbitrator Harold Carr heard the arbitration of the above matter. On Mar. 19, 2012, he prepared an award to plaintiff in the sum of $25,000 plus statutory costs and attorney's fees against Defendant Justin Chlarson.

Accordingly, IT IS HEREBY ORDERED that judgment is entered on the arbitrator's award pursuant to MAR 6.3, as stated above and contained in the judgment summary provided on the first pages of this pleading.

Dated this Apr. 20, 2012.

_Christine Pomeroy for_ (Pro tem (Retired))
The Honorable Superior Court Judge
Thomas McPhee

Presented by:

ANIMAL LAW OFFICES

Shawn Newman for Adam P. Karp, WSBA #28622
Attorney for Plaintiff

Approved as to form; notice of presentation waived:

Christopher Taylor, WSBA #38413
Attorney for Defendant

JUDGMENT/ORDER ON AWARD - 2

ANIMAL LAW OFFICES OF
ADAM P. KARP, ESQ.
114 W. Magnolia St., Ste. 425 • Bellingham, WA 98225
(360) 734-7273 • Facsimile: (360) 392-3936
adam@animal-lawyer.com

Main Document    Page 20 of 20

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (specify): **MEMORANDUM DECISION** was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner stated below:

1. **SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)** B Pursuant to controlling General Orders and LBRs, the foregoing document was served on the following persons by the court via NEF and hyperlink to the judgment or order. As of (date) 10/25/13, the following persons are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email addresses stated below.

Heide Kurtz (TR)
trustee@hkurtzco.com, ca45@ecfcbis.com

Tina M Locklear on behalf of Plaintiff Kendra Vorhies Flores
tina@locklearlaw.com

United States Trustee (LA)
ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

2. **SERVED BY THE COURT VIA UNITED STATES MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States mail, first class, postage prepaid, to the following persons and/or entities at the addresses indicated below:

Debtor/Defendant
Justin Thomas Chlarson
12531 Countryside St
El Monte, CA 91732

Debtor/Defendant
Justin Thomas Chlarson
223 Burnham Loop
Fort Leavenworth, KS 66027

Attorney for Debtor/Defendant
Thomas Allison
Law Offices of Thomas D Allison
336 1/2 S Glendora Ave Ste K
West Covina, CA 91790

☐ Service information continued on attached page

3. **TO BE SERVED BY THE LODGING PARTY:** Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by United States mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following persons and/or entities at the addresses, facsimile transmission numbers, and/or email addresses stated below:
☐ Service information continued on attached page

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                 **F 9021-1.1.NOTICE.ENTERED.ORDER**